[Cite as *State v. Lindhorst*, 2026-Ohio-72.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-01-006 |
| vs. | : | OPINION AND JUDGMENT ENTRY 1/12/2026 |
| ERIC THADDEUS LINDHORST, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CR41751

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

# **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Appellant, Eric Thaddeus Lindhorst, appeals his conviction in the Warren County Court of Common Pleas for kidnapping.

{¶ 2} On May 25, 2024, appellant and his wife, Natia Lindhorst ("Tia"), were the

parents of a six-week-old baby ("Baby"). The responsibilities of caring for an infant stressed appellant and Tia. On that day, as Tia was preparing to take Baby and have lunch with friends, she and appellant got into an argument over her request that he clean baby bottles. Tia and Baby left for lunch. They returned home around 5:30 p.m.-6:00 p.m., and the quarreling resumed. Appellant told Tia that Baby was welcome home but that Tia was not. Tia left the house with Baby. After a while Tia called appellant and sought to resolve their argument. Appellant asked that Tia bring Baby home.

{¶ 3}   Upon returning home, Tia did not feel that things between her and appellant were resolved, and decided to stay at a hotel with Baby. As Tia began packing, she laid Baby on a playmat while she retrieved clothes from Baby's room. When Tia returned, appellant was holding Baby. Despite Tia's requests, appellant refused to give her Baby, telling her that she was in no condition to care for Baby. While holding Baby, appellant pushed Tia out of the way and left the bedroom, retrieved his firearm, and went downstairs. Tia and appellant continued arguing. Appellant eventually climbed into Tia's car and began driving away with Baby on his lap. Tia was able to jump in the backseat before appellant could drive away. Appellant drove a short distance down the street and stopped. Tia exited the car. Appellant then returned home and went into the house. Tia and appellant continued to argue, and appellant refused Tia's requests to give Baby to her. During the argument, appellant pointed his firearm at Tia and told her to "back up."

{¶ 4}   Tia texted a neighbor for help. The neighbor observed Tia and appellant arguing outside their house. Tia was pleading with appellant not to take Baby. However, appellant placed Baby in her car seat, placed the car seat on the back seat of his truck without securing it, and drove away. During an ensuing conversation with her neighbor, Tia mentioned that appellant had a firearm. A short time later, appellant returned. As Tia was talking to appellant through the open truck window, the neighbor heard Tia ask

appellant to "please put the gun down." Alarmed, the neighbor told her husband to call 9-1-1.

{¶ 5}  Law enforcement officers responded to a dispatch of a domestic violence incident involving a weapon. They were also advised there was a baby in a white pickup truck. Two Warren County Sheriff Deputies were the first officers on the scene. As they arrived, appellant was in his truck on the street talking with Tia through the truck window. As the deputies pulled up behind appellant's truck and exited the patrol car, appellant immediately drove away. The deputies activated the patrol car's overhead lights and siren and followed appellant down the road for approximately a quarter mile, at which time appellant stopped his truck. The deputies exited their vehicle with their weapons drawn. At their commands, appellant turned off the truck but immediately became otherwise non-compliant.

{¶ 6}  The deputies instructed appellant to put his hands out of the truck's window and to not move them. Appellant placed only his left hand out of the window and kept moving and concealing his right hand. As a deputy repeatedly commanded appellant to put his hands out of the truck's window, appellant continued to move his right hand and, at times, concealed both hands inside the truck. In the meantime, other law enforcement officers responded to the scene. Once back up units were on the scene, appellant repeatedly refused officers' commands to leave Baby in the truck and exit the vehicle. Appellant eventually got Baby out of her car seat from the back floorboard of the truck and held her. Appellant then called to the officers, "Are you going to point guns at me while I'm holding my baby?" Officers repeatedly directed appellant to "put the baby down and exit the vehicle." Appellant remained in the truck holding Baby.

{¶ 7}  Appellant eventually exited the truck holding Baby in his arms in front of his chest. Appellant repeatedly refused officers' commands to put Baby back in the truck, set

her down, or turn the infant over to one of the deputies. Appellant responded, "Absolutely not." Officers were unable to tase appellant to take him into custody because he was holding Baby. Being unable to obtain appellant's compliance with officers' commands, Sergeant Joseph Gray called for the assistance of the Tactical Response Unit. After appellant continued to refuse commands to surrender, Tactical Response Unit members rushed appellant and held him upright while another member removed Baby from appellant's arms. Appellant resisted arrest, and Baby had to be forcibly removed from his grasp. Baby was crying, was hot, sweaty, and wet, and had red marks and a scratch on her head. A subsequent search of the truck yielded a loaded 9 mm handgun and a magazine in the center console.

{¶ 8}   On June 24, 2024, a Warren County Grand Jury indicted appellant with kidnapping, carrying a concealed weapon, improperly handling firearms in a motor vehicle, inducing panic, obstructing official business, endangering children, resisting arrest, and two counts of aggravated menacing. The kidnapping, carrying a concealed weapon, and improperly handling a firearm in a motor vehicle charges were each accompanied by a firearm-forfeiture specification. The State filed a bill of particulars on October 30, 2024. Appellant waived his right to a jury, and the case proceeded to a bench trial on November 8, 2024. At the outset of the trial, the State nollied the counts of carrying a concealed weapon and improperly handling firearms in a motor vehicle. Tia, the neighbor and her husband, and several law enforcement officers dispatched to the scene testified on behalf of the State. At the close of the State's case-in-chief, the trial court dismissed the firearm-forfeiture specification accompanying the kidnapping count under Crim.R. 29 but otherwise denied appellant's Crim.R. 29 motion. Subsequently, appellant presented the testimony of character witnesses but did not testify on his own behalf.

{¶ 9}   The trial court found appellant guilty of kidnapping, obstructing official

business, aggravated menacing regarding Baby, endangering children, and resisting arrest. The trial court found appellant not guilty of inducing panic and the aggravated menacing count involving Tia. Appellant was sentenced to three years of community control with conditions that he enter into and successfully complete inpatient drug, alcohol, and mental health treatment in a community-based correctional facility, serve a 90-day period of electronically-monitored supervision with a curfew upon release from the community-based correctional facility, and pay $2,738.80 in restitution to the Warren County Tactical Response Unit.

{¶ 10} Appellant now appeals, raising three assignments of error. The first and third assignments of error will be addressed together.

{¶ 11} Assignment of Error No. 1:

THE STATE VIOLATED THE DEFENDANT'S RIGHT TO KNOW THE NATURE OF THE KIDNAPPING ACCUSATIONS UNDER ART. 1, § 10, R.C. 2941.07, AND CRIM.R. 7(E) WHEN IT FAILED TO PARTICULARIZE ITS REMOVAL, RESTRAINT, HOSTAGE, AND SHIELDING THEORIES UNTIL ITS CLOSING ARGUMENT.

{¶ 12} Assignment of Error No. 3:

THE TRIAL COURT ERRED IN PERMITTING LINDHORST TO BE TRIED AND CONVICTED FOR A DIFFERENT KIDNAPPING OFFENSE THAN RETURNED BY THE WARREN COUNTY GRAND JURY.

{¶ 13} Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(1) for removing Baby from his truck with the purpose to hold her as a shield. R.C. 2905.01(A)(1) provides, "No person, . . . in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person . . . [t]o hold for ransom, or as a shield or hostage."

{¶ 14} In his first assignment of error, appellant argues that the short-form

indictment and the bill of particulars failed to give him notice of what conduct the State was alleging constituted the kidnapping offense under R.C. 2905.01(A)(1). Specifically, appellant asserts that the bill of particulars (1) made only one "particularized removal allegation," namely that appellant "removed [Baby] from the residence while in possession of a firearm," and (2) made no mention that appellant removed or restrained Baby with the purpose to hold her as a shield from arrest. Appellant proclaims that the State did not elucidate its removal and shielding theory until closing arguments when it argued for the first time on rebuttal that appellant committed kidnapping when he removed Baby from her car seat with the purpose to hold her as a shield from arrest.[1] Appellant argues that the State's variance of its pretrial removal allegation, without adequate notice to him, was prejudicial and in violation of the Ohio Supreme Court's decision in *State v. Haynes*, 2022-Ohio-4473.

{¶ 15} An individual accused of a felony is entitled to an indictment setting forth the nature of the accusation being made by the state. *Haynes* at ¶ 18. Pursuant to Crim.R. 7(B), an indictment "may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *State v. Buehner*, 2006-Ohio-4707, ¶ 9. Indictments that track the language of a criminal statute

---

1. The State waived the opening portion of its closing arguments.

are generally valid. *State v. Ramirez*, 2005-Ohio-2662, ¶ 50 (12th Dist.).

{¶ 16} A defendant seeking to clarify the facts of the criminal allegations set forth in the indictment is entitled to a bill of particulars. *State v. Armengau*, 2017-Ohio-4452, ¶ 55 (10th Dist.). Pursuant to Crim.R. 7(E), a bill of particulars must set forth the "nature of the offense charged and the conduct of the defendant alleged to constitute the offense." A bill of particulars has a limited purpose–to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. *Haynes*, 2022-Ohio-4473, at ¶ 23. The purpose of a bill of particulars is not to provide the accused with specifications of the evidence or to serve as a substitute for discovery. *Id.*

{¶ 17} Here, the indictment alleged that "on or about the 25th day of May, 2024," appellant "did, by force, threat, or deception, remove another from the place where she was found or restrain the liberty of her for the purpose of holding her as a shield or hostage in violation of [R.C.] 2905.01(A)(1), 2905.01(C)(1), Kidnapping, a felony of the first degree." The indictment tracked the language for kidnapping in R.C. 2905.01(A)(1) and, therefore, properly charged the offense. *State v. Skatzes*, 2004-Ohio-6391, ¶ 26. The bill of particulars filed by the State repeated verbatim the charges set forth in the indictment, including the kidnapping count, and then detailed the underlying facts of the case in a closing paragraph as follows:

> Defendant and his wife got into a verbal altercation. As wife was packing to leave, defendant picked up their minor child, [Baby] and grabbed a gun. Defendant pointed the firearm at wife telling her to get back. Defendant removed the minor child [Baby] from the residence while in possession of a firearm, placed her in an unsecured car seat in his vehicle. Wife jumped in the backseat of the vehicle, defendant drove away, threatening to kill all of them. Wife got out of the vehicle and ran back [to] the residence.
>
> Defendant returned to the residence and locked wife out. Defendant let wife back in but grabbed the minor child and put her in the vehicle again. Police arrived with emergency lights

activated and attempted to approach defendant, but he drove away. *Defendant stopped the vehicle and refused to follow commands from officers to exit the vehicle and leave the child in the vehicle.*

*Defendant exited the vehicle with the child and continued refusing to follow commands to place the child back in the vehicle. Defendant was held at gunpoint by multiple officers for approximately an hour and refused to follow commands.* The Tactical Response Unit responded to the scene. When defendant continued to refuse to follow commands, the Tactical Response Unit converged on defendant taking him to the ground while he actively resisted arrest. The minor child had to be forcefully removed from defendant. The minor child suffered scratches on her face and head area.[2]

(Emphasis added.)

{¶ 18} Although the bill of particulars only once explicitly mentions removal–Baby's removal from the residence–we find that the italicized language quoted above placed appellant on notice that the State was relying upon this conduct in prosecuting the kidnapping offense. That is, by exiting the truck with Baby in his arms and refusing to follow officers' commands while he was held at gunpoint, appellant removed Baby from her car seat and the truck with the purpose to hold her as a shield. The purpose of a bill of particulars is not to provide the accused with specifications of the evidence or to serve as a substitute for discovery. *Haynes*, 2022-Ohio-4473, at ¶ 23. "Additionally, a bill of particulars need not be precise, but rather 'need only be directed toward the conduct of the accused as it is understood by the [S]tate to have occurred.'" *State v. Balo*, 2011-Ohio-3341, ¶ 42 (3d Dist.), quoting *State v. Gingell*, 7 Ohio App.3d 364, 367 (1st Dist. 1982) Appellant was therefore sufficiently informed of the charge against him in both the indictment and bill of particulars.

{¶ 19} Contrary to appellant's assertion, the State did not first assert its removal

---

2. For purposes of readability, the paragraph detailing the underlying facts of the case has been divided into three paragraphs.

- 8 -

and shielding theory–appellant's removal of Baby from the truck and using her as a shield–during its rebuttal closing arguments. Rather, the State laid its theory of the kidnapping during its opening statement when it stated,

> [The deputies] exited their vehicle, guns drawn and began issuing orders to the defendant to exit the vehicle. They ordered him to place the child in the vehicle and exit. He refused to do so, repeatedly ignored commands, to put his hands out the window and exit the vehicle. . . . Ultimately, he picks up the child from the backseat and does exit the vehicle. However, instead of following commands to leave the child in the vehicle, he held the child in front of him, their five-week-old child at the time, in between himself and multiple officers who had arrived on scene, all aiming firearms in that direction. He continued to ignore responses to surrender the child and surrender himself and eventually Sergeant Gray made the decision to call in the tactical response unit.

{¶ 20} Based upon the foregoing, we find no variance between the allegations in the indictment and bill of particulars and the evidence presented at trial. Thus, appellant's assertion that the State varied its pretrial removal allegation without notice to him lacks merit.

{¶ 21} Appellant cites *Haynes* for the proposition that [w]hen a defendant is the custodian of a child, . . . the State must elucidate its removal theory in the bill of particulars–not during rebuttal closing, in the first place, when the evidence has concluded and defenses are foreclosed." *Haynes* involved a custody dispute between a grandfather and a father. The grandfather assumed physical custody of his grandchildren when his daughter, the mother of the grandchildren, died of an overdose. The grandfather took the children out of town for several days to spend Christmas with relatives. However, in the interim and unbeknownst to him, the father had obtained an ex parte order for temporary custody of the children. The order was not served on the grandfather. Consequently, the grandfather was indicted for abduction. He requested a bill of particulars pursuant to Crim.R. 7(E). The State did not provide one. The grandfather twice moved for an order

compelling the State to provide a bill of particulars, and the trial court denied both motions. Following a jury trial, the grandfather was convicted, and the Sixth District Court of Appeals upheld his conviction. At issue before the Ohio Supreme Court was whether the State is required to provide a bill of particulars when it is timely requested by a defendant. *Haynes*, 2022-Ohio-4473, at ¶ 17. In vacating the grandfather's conviction, the supreme court discussed at length the difficulty the grandfather experienced in identifying the conduct the State was alleging constituted abduction in view of the fact that the State never provided a bill of particulars, the children had been in the grandfather's physical custody all along, and the grandfather was not informed that the father had been granted ex parte custody of the children. Nevertheless, *Haynes* merely stands for the proposition that, without exception, the State is under a mandatory duty to provide a bill of particulars upon request. *Id.* at ¶ 20, 24, 26, and 28. Appellant was provided with a bill of particulars. *Haynes* is therefore inapplicable here.

{¶ 22} In light of the foregoing, we find that appellant received adequate notice of the crime with which he was charged, and he was given a fair opportunity to defend that charge. Appellant's first assignment of error is overruled.

{¶ 23} In his third assignment of error (and throughout his first and second assignments of error), appellant argues that he was tried and convicted for an offense for which he was not indicted, to wit, kidnapping under R.C. 2905.01(A)(5). Whereas R.C. 2905.01(A)(1) prohibits an accused from removing a person from the place where the person is found to hold as a shield, R.C. 2905.01(A)(5) prohibits the accused from removing the person from the place where the person is found "[t]o hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority." Appellant asserts that (1) holding a person as a shield and holding a person to shield against an arrest are not synonymous, (2) shielding from an

- 10 -

arrest constitutes "hindering, impeding, or obstructing" a law enforcement function, which is encompassed within kidnapping under R.C. 2905.01(A)(5), (3) if shielding encompassed shielding from an arrest, this would render R.C. 2905.01(A)(5) superfluous, and (4) because he was essentially convicted for a conduct exclusively encompassed within R.C. 2905.01(A)(5), yet was only indicted under R.C. 2905.01(A)(1), his "constitutional right to be prosecuted on the Kidnapping offense returned by the Warren Grand Jury–not a different offense developed by the prosecutor at trial," was violated.

{¶ 24} "Shielding from arrest," in a broad, general sense, is encompassed within the conduct proscribed by R.C. 2905.01(A)(5) as such would "hinder, impede, or obstruct" law enforcement officers in effecting an arrest. However, there are other ways in which an offender may violate R.C. 2905.01(A)(5), such as by kidnapping a witness to prevent the witness from speaking to investigators or testifying, or by kidnapping one's children to avoid questions from a children's services agency. *See State v. Berry*, 2017-Ohio-1529 (10th Dist.); *State v. Volgares*, 1999 Ohio App. LEXIS 2359 (4th Dist. May 17, 1999). R.C. 2905.01(A)(1) is a more specific characterization of a prohibited conduct, because shielding need not involve "hindering, impeding, or obstructing" government actors in the performance of their duties. In a traditional sense, shielding under R.C. 2905.01(A)(1) may simply involve holding a person as a shield to prevent being hurt. This is illustrated by a deputy's testimony that he would have tased appellant if the latter did not hold Baby in his arms. That there may be some overlap in the conduct criminalized by R.C. 2905.01(A)(1) and 2905.01(A)(5) does not render either subsection superfluous. That appellant could have faced an additional charge under R.C. 2905.01(A)(5) does not mean he was improperly charged and tried under R.C. 2905.01(A)(1). Accordingly, appellant was not prejudiced by being indicted and convicted under R.C. 2905.01(A)(1).

{¶ 25} Appellant's third assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT VIOLATED DUE PROCESS BY CONVICTING LINDHORST OF F1 KIDNAPPING UNDER R.C. 2905.01(A)(1) ON INSUFFICIENT EVIDENCE.

{¶ 28} Appellant challenges his kidnapping conviction under R.C. 2905.01(A)(1), arguing that the State elicited insufficient removal and shielding evidence. Appellant asserts that he removed Baby from the house solely to separate Baby from Tia until the latter stabilized, and that once officers arrived on the scene, he removed Baby from her car seat to comfort her because she was hot and uncomfortable, and subsequently exited the truck while holding Baby in compliance with officers' commands.[3] Appellant further asserts that even if he removed Baby from the car seat to hold her as a shield against arrest, it was insufficient evidence for kidnapping under R.C. 2905.01(A)(1) because "[t]hat purpose is instead criminalized under R.C. 2905.01(A)(5)."

{¶ 29} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Meier*, 2023-Ohio-490, ¶ 10 (12th Dist.). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

_____

3. In support of his insufficient removal evidence argument, appellant asserts he received contradictory commands to both exit, yet remain, in the truck from the first two responding deputies, thereby making it unclear what to do. During his testimony, a deputy agreed with the trial court's assessment that "a couple of times, [appellant] would've received inconsistent statements from either [the deputy] or from your partner." Appellant's encounter with the deputies was recorded by the patrol car's camera. The recording shows that the deputies initially ordered appellant multiple times to put his hands outside the truck and that one of the deputies then ordered appellant to open the door three times, at which point his partner and supervisor advised him, "No, we don't want him out of the truck yet." It is not clear whether appellant, who was inside his truck, heard the supervisor's statement. Whereas the deputies' commands were given in a loud voice, the supervisor's statement was made in a normal tone. In any event, appellant never inquired about the alleged confusing commands and continued to refuse commands to keep his hands out of the truck, leave Baby in the truck and exit the vehicle, and surrender Baby once he exited the truck.

a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test requires a determination as to whether the state has met its burden of production at trial. *Meier* at ¶ 10. When evaluating the sufficiency of the evidence, this court defers to the trier of fact regarding questions of credibility. *Id.*

{¶ 30} In convicting appellant of kidnapping under R.C. 2905.01(A)(1), the trial court found that it occurred when appellant grabbed Baby from her car seat located on the back floor of his truck and subsequently removed her from a place where she was safe–appellant's truck–to a place outside the truck where firearms were pointed at appellant. The trial court further found that upon exiting his truck with Baby, appellant held her "with the specific purpose of keeping [himself] safe and keeping these law enforcement officers from doing things that they might otherwise do," such as using a taser or other type of intervention to restrain him. The trial court stated that appellant's purpose of using Baby as a shield began when he encountered the officers.

{¶ 31} The record belies appellant's version of the events. The State presented evidence that after appellant turned his truck off, he repeatedly refused to put his hands outside the vehicle, instead keeping one or both hands inside the truck. Instead of complying with these commands or officers' commands to exit the vehicle, appellant removed Baby from her car seat and remained in the truck with Baby on his lap, preventing law enforcement from taking any aggressive action to resolve the situation. Appellant's intent is made clear when he stated to the officers, "Are you going to point guns at me while I'm holding my baby?" Appellant further refused multiple commands to leave Baby in the truck and exit the vehicle. Then, upon exiting the truck, appellant held Baby to his chest and repeatedly refused officers' commands to put Baby back in the truck, set her down, or turn Baby over to one of the officers, thus declining to surrender her to police. The State presented evidence that even when the Tactical Response Unit

rushed appellant, he continued holding Baby and she had to be forcibly removed from his grasp.

{¶ 32} Viewing the evidence in a light most favorable to the State, we find that the foregoing is sufficient evidence that appellant removed Baby from her car seat and the truck–a place where she was safe–and held her outside the truck as a shield against arrest and being physically hurt. We note that the committee comment to R.C. 2905.01 provides that "[a]n offense under this section does not depend on the distance the victim is removed. Rather it depends on whether the removal . . . is such as to place the victim in the offender's power and beyond immediate help, even though temporarily. Thus, removal of the victim may be for only a short distance."

{¶ 33} In light of the foregoing, we find that the State presented sufficient evidence to support appellant's kidnapping conviction under R.C. 2905.01(A)(1). Moreover, incorporating our analysis under the third assignment of error here, we find that appellant's argument there was insufficient evidence of shielding because "[t]hat purpose is instead criminalized under R.C. 2905.01(A)(5)" lacks merit.

{¶ 34} Appellant's second assignment of error is overruled.

{¶ 35} Judgment affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge